# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 24, 2010

## STATE OF TENNESSEE v. JAMES PARKER, aka "SELF"

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S51,099      Robert H. Montgomery, Judge**

---

**No. E2009-02353-CCA-R3-CD - Filed November 23, 2010**

---

The defendant, James Parker, aka "Self," was convicted by a Sullivan County Criminal Court jury of sale of less than 0.5 grams of cocaine, a Class C felony; delivery of less than 0.5 grams of cocaine, a Class C felony; possession of 0.5 grams or more of cocaine with intent to sell or deliver, a Class B felony; sale of 0.5 grams or more of cocaine, a Class B felony; delivery of 0.5 grams or more of cocaine, a Class B felony; sale of 0.5 grams or more of cocaine within 1000 feet of a school, a Class A felony; and delivery of 0.5 grams or more of cocaine within 1000 feet of a school, a Class A felony. The alternate delivery counts merged into the sale counts, and the trial court sentenced the defendant to six years for sale of less than 0.5 grams of cocaine, eight years for possession of 0.5 grams or more of cocaine with intent to sell or deliver, eight years for sale of 0.5 grams or more of cocaine, and twenty-five years for sale of 0.5 grams or more of cocaine within 1000 feet of a school. The court ordered that the twenty-five-year sentence be served consecutively to the other sentences, which were to be served concurrently, for an effective term of thirty-three years in the Department of Correction. On appeal, the defendant challenges the sufficiency of the evidence and the sentences imposed by the trial court. After review, we affirm the judgments of the trial court. However, the judgment in count seven incorrectly identifies the defendant's conviction for delivery of 0.5 grams or more of cocaine within 1000 feet of a school as a Class B felony; therefore, we remand for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Stephen M. Wallace, District Public Defender; Richard A. Tate, Assistant Public Defender (on appeal); and Brad Sproles, Kingsport, Tennessee (at trial), for the appellant, James Parker, aka "Self."

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; H. Greeley Wells, Jr., District Attorney General; and Jack Lewis Combs, Jr. and Teresa A. Nelson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case arises out of three controlled drug transactions that took place on February 2, March 11, and April 19, 2005, between an undercover police officer, a confidential informant, and the defendant in Kingsport.

At trial, Officer Mark Johnson with the Kingsport Police Department testified that in 2005, he was working in the department's Vice Unit. As part of a drug eradication effort, Officer Johnson would "be given a sum of money, [he would] go out and try to purchase cocaine or pills or whatever [he] could from people in the Kingsport area." Officer Johnson partnered with a confidential informant.

On February 2, 2005, Officer Johnson was equipped with a body wire and video recording device; given a sum of previously photocopied money; and met with the informant who believed that Officer Johnson was also a confidential informant. Officer Johnson and the informant then embarked to find someone from whom to purchase drugs. Officer Johnson noted that other officers searched both him and the informant and their vehicle before they left and upon their return.

Officer Johnson and the informant drove to the Riverview community where they encountered the defendant. Officer Johnson told the defendant, "I want 40," which was the appropriate way to indicate that he wanted to purchase $40 of crack cocaine. After some discussion, the defendant gave Officer Johnson an amount of crack cocaine out of a bag. When Officer Johnson asked for more, the defendant gave him some more from the same bag. Officer Johnson saw the bag and estimated that he received about one-fourth of the total contents of the bag. During the encounter, Officer Johnson and the defendant were "face to face," less than eight inches apart, and Officer Johnson was able to see the defendant's entire face. In court, Officer Johnson identified the defendant as the person who sold him the drugs.

Officer Johnson testified that after they made the purchase, he and the informant returned to the secure location where they turned over the drugs to Officer Sean Chambers. A video recording of the February 2 transaction was played for the jury. The day after the transaction, Detective Cliff Ferguson had Officer Johnson view a photographic lineup of six

individuals from which Officer Johnson identified the defendant as the person who sold him the drugs.

Officer Johnson testified that on March 11, 2005, after being equipped as before, he and the informant set out to make an undercover drug buy and again made contact with the defendant. Officer Johnson bought $100 worth of crack cocaine from the defendant and returned to the secure location where he turned the drugs over to Officer Chambers. During the transaction, the defendant stood at the passenger side window of the vehicle Officer Johnson was driving, so they were approximately four feet apart. In court, Officer Johnson identified the defendant as the person who sold him the drugs. A video recording of the March 11 transaction was played for the jury. Officer Johnson said that Detective Ferguson showed him a photographic lineup the same day of the transaction from which he identified the defendant as the person who sold him the drugs.

Officer Johnson testified that on April 19, 2005, he was equipped as on the other occasions, and he and the informant encountered the defendant at a pre-arranged location, M&M Market, which was on the corner of East Center Street and Eastman Road, across the street from the Dobyns-Bennett High School complex. On this occasion, the defendant stood at the passenger side window and directed the informant to get out of the car and retrieve a plastic bag of crack cocaine from under a pack of cigarettes in the center console of the defendant's car. When the informant returned, he gave the package to Officer Johnson, and Officer Johnson gave the defendant $100. Officer Johnson and the informant returned to the secure location where Officer Johnson turned the drugs over to Officer Chambers. A video recording of the April 19 transaction was played for the jury.

On cross-examination, Officer Johnson testified that he had not had any dealings with the defendant prior to the February 2, 2005 transaction, nor had he had any dealings with anyone with a street name or nickname of "Self." Officer Johnson acknowledged that between February and April 2005, he was involved in approximately 100 undercover drug transactions involving several different sellers.

Corporal Kevin Kelly with the Kingsport Police Department testified that he was assigned to the Property and Evidence Unit and, as such, was responsible for transporting evidence to and from the Tennessee Bureau of Investigation ("TBI") lab in Knoxville for analysis. Corporal Kelly identified an envelope of evidence that he packaged and sealed on February 4, 2005. He transported the envelope to the TBI lab and received it back. Corporal Kelly identified an envelope of evidence that he packaged and sealed on March 17, 2005. He transported the envelope to the TBI lab and received it back. Corporal Kelly also identified an envelope of evidence he packaged on April 22, 2005. However, that envelope was transported to the TBI lab by Sergeant David Moore with the Kingsport Police

Department, and Corporal Kelly logged it into evidence when it was received back.

Sergeant Moore testified that he "backed up" Corporal Kelly in the evidence room in 2005. He explained that he essentially functioned as a courier, taking evidence to the TBI lab in Knoxville, and was not involved in the packaging of evidence.

Jake White, Geographic Information Systems ("GIS") Manager for the City of Kingsport, was accepted as an expert in cartography. White testified that he was familiar with the statewide GIS base mapping program and, using that program, generated a map of specific areas of Sullivan County. White stated that Exhibit 3, a map prepared by someone in his office, showed a red boundary line around the property of Dobyns-Bennett High School and a shaded red area showing a 1000-feet buffer around the Dobyns-Bennett property. White testified that M&M Market, located at 1571 North Eastman Road, was identified on the map with a bold yellow line and a "pull out box." White stated that based on his expertise and training, it was his opinion that M&M Market was located within 1000 feet of the real property of Dobyns-Bennett High School.

Tyler Fleming, Director of Student Services for the Kingsport City Schools, testified that he was familiar with all the city schools in the City of Kingsport and that Dobyns-Bennett High School was an operating public secondary school in the months of February, March, and April 2005. Fleming identified on the map, Exhibit 3, the areas consisting of school property in April 2005.

Detective Cliff Ferguson with the Kingsport Police Department Vice Unit testified that Officer Johnson, the confidential informant, and their vehicle were all searched before leaving to make a drug purchase. Officer Johnson was also outfitted with a body wire and video recording device. On February 2, 2005, Officer Johnson and an informant were sent to the Riverview area of Kingsport "to purchase narcotics off of anybody on the street." Detective Ferguson was not able to visually witness the transaction, but he listened on the body wire. The next day, Detective Ferguson watched the video of the transaction and recognized the defendant as the seller. Detective Ferguson had come into contact with the defendant "a lot in the past . . . 12 or 13 years." Detective Ferguson prepared a photographic lineup, which he showed to Officer Johnson and Officer Johnson made an identification.

Detective Ferguson testified that on March 11, 2005, Officer Johnson and the informant were driving on Sevier Street when the informant relayed over the wire that they saw the individual they had purchased cocaine from on February 2. Detective Ferguson informed them to go back and attempt to make another purchase from the individual. Officer Johnson and the informant then met with the defendant at the corner of Oak Street and East Sevier Street. Detective Ferguson was "quite the distance away" from the meeting

spot, but he was familiar with the type and color of vehicle the defendant drove and saw it from "a distance away." He could not make out the seller's face but said that "[i]t appeared to be the same stature" as the defendant. Detective Ferguson observed the seller approach the passenger side of Officer Johnson's vehicle and heard the conversation on the wire. The seller then returned to his vehicle, and Officer Johnson and the informant soon thereafter met with the other officers and turned over the crack cocaine. Detective Ferguson stated that audio and video recordings were taken of the transaction. The same day, Officer Johnson reviewed another photographic lineup from which he identified the defendant.

Detective Ferguson testified that prior to the transaction on April 19, 2005, he had the informant call the defendant and prearrange a deal over the phone. They agreed to meet at M&M Market at the intersection of North Eastman Road and East Center Street, directly across the street from the Dobyns-Bennett High School tennis courts. Detective Ferguson was at a nearby location and observed the defendant's vehicle parked on the north side of the building. Detective Ferguson saw the defendant walk out of the market toward his vehicle. Detective Ferguson said that he was close enough to see the defendant's face and identified him in court. When the defendant exited the market, Officer Johnson and the informant, who were parked on the south side of the building, drove to the north side of the building where the defendant's vehicle was parked. The transaction took place outside of Detective Ferguson's line of sight, but he heard the transaction over the audio wire.

On cross-examination, Detective Ferguson acknowledged that he did not know if the defendant had a street name. He testified regarding telephone conversations prior to the March 11 transaction that he could only hear the informant's end of the conversation with the seller, during which the informant referred to the seller as "Self." Detective Ferguson stated that he was too far away to see the seller's face during the March 11 transaction. However, he could identify the seller's vehicle but was not able to get a license plate number.

Officer Sean Chambers with the Kingsport Police Department testified that his main role in the case was to retrieve the evidence from Officer Johnson after the purchases were made, take it to the evidence room, and complete the necessary paperwork. Officer Chambers stated that he was at the predetermined location for the search of Officer Johnson before and after the February 2 transaction, and the proper procedures were followed. After the transaction, he obtained from Officer Johnson a "tan substance that was wrapped in nothing and it [was] a lot of crumbs on that date." He identified Exhibit 12 as the substance he retrieved from Officer Johnson. Officer Chambers field-tested the substance, and it was positive for the presence of cocaine. He explained how he packaged and sealed the contents in an envelope and placed the substance into evidence at the Kingsport Police Department.

Officer Chambers testified that a similar procedure took place with regard to the March 11 transaction. He was able to observe "a portion of what was going on" but could not identify anyone. He heard the transaction over the wire as it transpired. Afterwards, he took into custody from Officer Johnson a plastic bag that contained a tan-colored substance, identified as Exhibit 13. Again, Officer Chambers field-tested the substance, and it was positive for the presence of cocaine. He then packaged and sealed the substance and placed it into evidence at the Kingsport Police Department.

Officer Chambers testified that a similar procedure took place with regard to the April 19 transaction. Officer Chambers was present during the surveillance and monitoring of the transaction and was able to get the license plate number, QCT537, from the suspect's vehicle. The registration listed the defendant as the owner of a vehicle with that license plate number. After the transaction was complete, Officer Chambers took a substance, identified as Exhibit 14, into custody from Officer Johnson. Again, Officer Chambers field-tested the substance, and it was positive for the presence of cocaine. He then packaged and sealed the substance and placed it into evidence at the Kingsport Police Department.

Special Agent Jacob White, a forensic scientist with the TBI Crime Lab in Knoxville, was accepted as an expert in the field of drug identification. Agent White testified that he analyzed the substance in Exhibit 12 in February 2005 and determined that it weighed 0.3 grams and contained cocaine base.

Special Agent Clayton Hall with the Forensic Chemistry Unit of the TBI Crime Lab in Knoxville was accepted as an expert in the field of drug identification. Agent Hall testified that he analyzed the substance in Exhibit 13 in March 2005 and determined that it weighed 0.7 grams and contained cocaine base.

Special Agent Celeste White, a forensic scientist with the TBI Crime Lab in Knoxville, was accepted as an expert in the field of drug identification. Agent White testified that she analyzed the substance in Exhibit 14 in April 2005 and determined that it weighed 0.5 grams and contained cocaine base.

After the conclusion of the proof, the jury convicted the defendant, as charged, of the February 2, 2005 sale of less than 0.5 grams of cocaine; the February 2, 2005 delivery of less than 0.5 grams of cocaine; the February 2, 2005 possession of 0.5 grams or more of cocaine with intent to sell or deliver; the March 11, 2005 sale of 0.5 grams or more of cocaine; the March 11, 2005 delivery of 0.5 grams or more of cocaine; the April 19, 2005 sale of 0.5 grams or more of cocaine within 1000 feet of a school; and the April 19, 2005 delivery of 0.5 grams or more of cocaine within 1000 feet of a school.

## ANALYSIS

## I. Sufficiency of the Evidence

The defendant argues that the jury verdict was contrary to the law and the evidence, the evidence was insufficient to sustain his convictions, and the evidence at the trial preponderates against the guilt of the defendant in favor of his innocence. These challenges are essentially a singular challenge to the sufficiency of the convicting evidence. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant does not challenge that drug transactions took place, the amount of cocaine sold or delivered, or that one transaction occurred within 1000 feet of a school. He

only argues that the evidence was insufficient to establish his identity as the perpetrator of the offenses and, with respect to the possession of 0.5 grams or more of cocaine with intent to sell or deliver, that "the record is void with respect to the amount or contents of the small bag that Officer Johnson testified to[.]"

Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the offenses. Officer Johnson testified that he, in an undercover capacity, purchased crack cocaine from the defendant on February 2, March 11, and April 19, 2005. On each of the occasions, Officer Johnson and the defendant were in close physical proximity – distances of eight inches apart on February 2 to three or four feet apart during the other encounters. After the February and March transactions, Officer Johnson identified the defendant as the seller from a photographic lineup. Officer Johnson identified the defendant as the seller in court. Detective Ferguson, who had known the defendant for more than twelve years, recognized the defendant on the video recording of the February 2 transaction. Officer Chambers was able to get a license plate number from the vehicle driven by the seller during the April 19 transaction, and the vehicle was registered to the defendant. Moreover, the video recordings of each of the transactions were played for the jury for it to assess the seller's identity. This evidence was more than sufficient for the jury to conclude that the defendant was perpetrator of the offenses.

As to the defendant's argument that there was no proof with respect to the amount or contents of the bag giving rise to the possession of 0.5 grams or more of cocaine with intent to sell or deliver conviction, we likewise conclude that in the light most favorable to the State, the evidence was sufficient. Officer Johnson testified that he approached the defendant on February 2 and asked to purchase $40 of crack cocaine. After some discussion, the defendant gave Officer Johnson an amount of crack cocaine out of a bag. Officer Johnson asked for more, and the defendant gave him some more from the same bag. Officer Johnson saw the bag from which the defendant retrieved the substance and estimated that the portion he received amounted to about one-fourth of the total contents of the bag. Special Agent White analyzed and weighed the substance purchased by Officer Johnson and determined that it was 0.3 grams of cocaine base. From this evidence, a rational trier of fact could reasonably conclude that the substance in the defendant's bag contained cocaine and that it weighed more than 0.5 grams.

## II. Sentencing

The trial court conducted a sentencing hearing[1] after which it merged the alternate delivery counts into the sale counts and sentenced the defendant to six years for sale of cocaine, eight years for possession of 0.5 grams or more of cocaine with intent to sell or deliver, eight years for sale of 0.5 grams or more of cocaine, and twenty-five years for sale of 0.5 grams or more of cocaine within 1000 feet of a school. The court ordered that the defendant's sentence on the conviction for sale in a school zone be served consecutively to the other sentences, which were to be served concurrently with each other. The court noted that the jury had imposed fines on all of the convictions, and it suspended the fines except in count six, the school zone sale, which was a $100,000 fine. The court also denied alternative sentencing on the convictions for which the defendant was eligible based on a finding that confinement was necessary to protect society by restraining a defendant with a long history of criminal conduct and that measures less restrictive than confinement had been applied unsuccessfully to the defendant.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App.

---

[1] The defendant waived his ex post facto protections and elected to be sentenced under the provisions of the 2005 amendments to the Sentencing Act.

2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

## A. Sentence Length

In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed" and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

Here, the trial court enhanced the defendant's sentences based on his history of criminal convictions or behavior in addition to those necessary to establish the appropriate range, see Tenn. Code Ann. § 40-35-114(1), noting that he had three prior drug-related convictions, four bad check convictions, and convictions for possession of an illegal weapon and possession of a firearm. The court also noted that the defendant admitted prior use of marijuana and cocaine. The court observed that the defendant had a sustained intent to violate the law illustrated by the fact that he was discharged from supervision on an eight-year sentence for a cocaine-related conviction, then fifteen days later was arrested again for possession of cocaine.

The court also enhanced the defendant's sentences based on his previous failure to comply with the conditions of a sentence involving release into the community. See id. § 40-35-114(8). The court observed that the defendant was on probation for a 1990 cocaine-related offense in New Jersey when he committed a cocaine-related offense in Blount County. Furthermore, the court noted that the defendant was placed on supervised probation in February 1993 for the Blount County offense, and his probation was revoked for a violation in May 1995. After the defendant was later released on parole, his parole was revoked.

The trial court addressed the mitigating factors and found that none applied. The court also addressed non-statutory mitigating factors, such as remorse, work history, self-rehabilitative efforts, and voluntary confession of guilt, finding none. However, the court found as a non-statutory mitigating factor that the defendant had received an honorable discharge from the Army.

The defendant suggests that the length of his sentence is inappropriate because it is "outside of what the Tennessee Sentence Practice reports that the sentence should ha[ve] been[.]" However, the defendant failed to elaborate on this allegation or explain how that entitles him to relief. The defendant also argues that his sentence on the sale in a school zone conviction was in essence already enhanced by virtue of Tennessee Code Annotated section 39-17-432(b)(1).[2] However, he failed to provide authority for this proposition that Tennessee Code Annotated sections 39-17-432 and 40-35-114 are mutually exclusive, nor has our research revealed such authority.

The record shows that the trial court considered the appropriate sentencing principles and all relevant facts and circumstances. The court conducted a thorough analysis of the mitigating and enhancement factors, and the enhancement factors that it found are supported by the record. The defendant is not entitled to relief.

## B. Consecutive Sentencing

The defendant challenges the trial court's imposition of consecutive sentences. He seemingly argues that consecutive sentencing was inappropriate because the court used his criminal record to both enhance his sentence and as a basis for consecutive sentencing and because "all of the cases were involving the same confidential informant and police officer, [and] all occurred within a short period of time[.]"

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> . . . .

---

[2] The Drug-Free School Zone Act provides, "A violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public . . . secondary school . . . shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation."

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]

Tenn. Code Ann. § 40-35-115(b) (2006). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995).

In considering the State's request to sentence the defendant consecutively, the trial court noted that the defendant did not have any real employment history but determined that there was not enough evidence for it to find that the defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood. See Tenn. Code Ann. § 40-35-115(b)(1). However, the court discussed the defendant's criminal record and found that he had an extensive record of criminal activity. See id. § 40-35-115(b)(2).

The court also considered whether the defendant was a dangerous offender. In addressing this consideration, the court observed that selling drugs was not necessarily "in and of itself" a dangerous activity but was a dangerous activity because the "individuals who use drugs often times need . . . money to buy those drugs. They end up committing crimes in order to be able to obtain those drugs." The court continued that based on the defendant's pattern of committing offenses shortly after being released from custody and/or while on probation or parole, the defendant was "going to continue to sell drugs unless he's put in a position where he's not going to be able to do that." The court made the added findings that an extended sentence was necessary to protect the public against further criminal conduct of the defendant and reasonably related to the severity of the offense given the defendant's continued possession and selling of cocaine and, in this case, one time "right across the street from a high school[.]"

This court has previously upheld a trial court's imposition of consecutive sentences on the dangerous offender basis where the defendant was involved in the sale of cocaine. See State v. Darryl Hubbard, No. W2008-02437-CCA-R3-CD, 2010 WL 1610519, at *5-6 (Tenn. Crim. App. Apr. 19, 2010). However, we need not address the propriety of the trial court's finding the defendant a dangerous offender in this case because the trial court properly acted in its discretion in ordering consecutive sentences based on a finding that the defendant had an extensive record of criminal activity. The presentence report shows that,

in addition to the number of charges in the present case, the defendant had three prior drug-related convictions, four convictions for violating the bad check law, and convictions for unlawful possession of a weapon and possession of a prohibited weapon. We note that this court has held that a trial court may consider the offenses for which a defendant is being sentenced in determining whether the defendant has an extensive record of criminal activity for consecutive sentencing purposes. See State v. Daryl Adrian Benjamin Ingram, No. W2002-00936-CCA-R3-CD, 2003 WL 721704, at *3 (Tenn. Crim. App. Feb. 26, 2003), perm. to appeal denied (Tenn. Sept. 2, 2003). Moreover, we are aware of no authority, nor has the defendant provided any, for his proposition that his criminal record could not be used for both enhancement and consecutive sentencing. The record supports the sentences imposed by the trial court, and the defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court. However, the judgement in count seven incorrectly identifies the defendant's conviction for delivery of 0.5 grams or more of cocaine within 1000 feet of a school as a Class B felony; therefore, we remand for entry of a corrected judgment.

_____
ALAN E. GLENN, JUDGE